DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the May 4, 2006 judgment of the Lucas County Court of Common Pleas of Common Pleas, Juvenile Division, which awarded permanent custody of appellant's minor children, Jordan B. and Callie B., to Lucas County Children's Services ("LCCS"). Appellant, the children's father, appeals the juvenile court's decision; however, the children's mother, whose parental rights were also terminated, has not appealed.
 {¶ 2} Appellant raises the following assignments of error on appeal: *Page 2 
 {¶ 3} "1. The trial court erred when it denied appellant's motion to continue.
 {¶ 4} "2. The trial court erred when it denied paternal grandfather's motion to intervene.
 {¶ 5} "3. The trial court erred when it admitted evidence of prior bad conduct in violation of Evidence Rule 404.
 {¶ 6} "4. The trial court's decision was against the manifest weight of the evidence."
 {¶ 7} On September 29, 2004, LCCS filed a complaint for dependency, neglect, and abuse regarding Jordan and Callie, after Callie presented at the hospital with a broken clavicle. Appellant and the children's mother were married at the time, but were separated and living in different residences. Callie was in her mother's custody at the time of her injury; however, her mother did not know how the injury occurred. On November 4, 2004, a case plan was implemented, with unification of the children with their parents being the stated goal. With respect to appellant, in particular, he was required to undergo a substance abuse assessment and a diagnostic assessment, and was required to follow any recommendations therefrom. On November 9, 2004, the juvenile court found that Jordan was dependent and Callie was abused and granted temporary custody to LCCS.
 {¶ 8} In November 2004, appellant was assessed for substance abuse and tested positive for cocaine. He was referred for intensive outpatient treatment, but failed to attend and was discharged from the program. Appellant testified that he did not pursue *Page 3 
treatment because he did not have a substance abuse problem. The children's paternal grandfather filed a motion for legal custody and to intervene on November 7, 2005. LCCS moved for permanent custody on December 21, 2005.
 {¶ 9} Approximately one month prior to the permanent custody trial in this case, which was held April 25 and 26, 2006, appellant underwent a diagnostic assessment. At the time of his diagnostic assessment, the children had been in foster care for approximately 18 months. As a result of his 2006 assessment, appellant was referred for counseling and parenting classes. At the time of the permanent custody trial, appellant had attended one counseling session and was scheduled to begin parenting classes. Appellant testified that he was reassessed for substance abuse treatment, but was told that additional information was needed before a treatment decision could be made. The children's guardian ad litem submitted a report to the juvenile court recommending that appellant's parental rights not be terminated and objecting to permanent custody being granted to LCCS.
 {¶ 10} Susan Hickey, caseworker for LCCS, testified regarding the parents' compliance with their case plans. Hickey testified that the children's mother had complied with respect to her substance abuse assessment, parenting classes, and diagnostic assessment for counseling services; however, she stopped attending her counseling and was discharged from the program. Hickey testified that the mother had stated repeatedly that "she didn't feel that she could meet the emotional and financial needs of the kids and felt that they would be better off with the foster placement that they *Page 4 
were at." Regarding potential placement with family members, Hickey testified that the mother indicated that "[s]he didn't feel there was no one in her family and she said that she didn't feel that anyone in Chris's family could do that either." The children's mother was not present at the permanent custody trial.
 {¶ 11} With respect to appellant, Hickey stated that LCCS was seeking permanent custody because his parental rights had been terminated in 2001 with respect to another child, Andrew B., who was diagnosed with non-organic failure to thrive; he failed to complete any case plan services prior to trial; the length of time the children had been in the temporary custody of LCCS; and the mother's assertions that the children's best interests would be for them to be placed in the permanent custody of LCCS. Hickey testified on cross-examination that appellant had visited the children on a weekly basis throughout the time they were in the temporary custody of LCCS. She further testified that, in January 2006, appellant had a baby with his girlfriend, who was not the mother of Jordan and Callie, and that, in order for appellant to be able to live with his girlfriend and new baby, LCCS was requiring appellant to complete a case plan.
 {¶ 12} Appellant testified that he was still married to Jordan and Callie's mother, but that they were living separate and apart, and had been at the time of Callie's injury. Although appellant went to the hospital, he was not present when Callie was injured and did not know how the injury occurred. Appellant testified that LCCS gave him a case plan to comply with because they were attempting to place the children and he was informed that he "was not an option" because of his past history concerning Andrew. *Page 5 
Appellant explained that he did not comply with the case plan because, based on statements by LCCS caseworkers, he believed that even if he completed the case plan services, he would not be a viable placement option for the children. However, appellant visited the children every week while they were in the temporary custody of LCCS. In January 2006, appellant's girlfriend gave birth. Appellant testified that a LCCS investigator told his girlfriend that his baby was not allowed to live with him and that she would have to leave their home, which she did. Appellant stated that he began to engage in case plan services shortly before trial because of his new child and because he did not "want to give up on [his] children" and did not "want them growing up wondering why [he] quit on them." Regarding his prior termination of parental rights, appellant testified that, even though Jordan was born at the time Andrew was removed, the judge told him that he "was perfectly fine to raise [Jordan] * * * he just didn't feel that [appellant] was okay to raise Andrew because he was a special needs child."
 {¶ 13} Appellant's girlfriend testified that she was dating him since spring of 2004. She testified that appellant had regular visitation and contact with Jordan and Callie. She stated that the children's mother "would get kind of stressed out with the children * * * and would be constantly calling, asking [appellant] to take the kids because she couldn't handle them." The girlfriend testified that she complained about the care provided to Jordan and Callie by their mother; for example, the mother would drop them off dirty, hungry, and with no change of clothes. When asked if appellant ever indicated he would take action to address her concerns, the girlfriend stated that they provided the children *Page 6 
with clothing and would take "the children more frequently because [the mother] would get stressed out and not do the right thing by the children." She also complained that the mother would get "stressed out" and "call all the time" asking appellant to take the children. The girlfriend testified, "If * * * we just gave the kids back like two days ago, she would call the third day and say they're stressing me out, you guys please take `em, please take `em. And * * * she had made threats * * * like giving them over to Children Services because she couldn't handle them if we didn't take them."
 {¶ 14} The juvenile court granted permanent custody to LCCS in its May 4, 2006 judgment entry. In granting LCCS's motion for permanent custody as to appellant, the juvenile court found that appellant had his parental rights involuntarily terminated in 2001 with respect to his son Andrew; failed to complete the case plan services; and "did little to address the concerns" regarding the mother's care of the children, "other than visit with them a little more frequently." The court focused on the fact that appellant tested positive for cocaine after Jordan and Callie were removed from his care, but then denied the need for treatment and stopped participating in the program. Regarding his failure to utilize the case plan services LCCS offered him, the trial court found that appellant's claim that he was "discouraged from attending case plan services by LCCS personnel" was not credible because he had begun treatment, but then stopped, and because he visited the children weekly for 18 months. The juvenile court also found that appellant was motivated to comply with the case plan immediately prior to the permanent custody trial because of LCCS's intervention following the birth of appellant's daughter in January *Page 7 
2006. Ultimately, the juvenile court found that it would be in the best interest of the children for permanent custody to be awarded to LCCS; that the children needed legally secure permanent placement; and that an award of permanent custody would facilitate an adoptive placement.
 {¶ 15} On appeal, appellant argues in his first assignment of error that the trial court erred when it denied his motion to continue the permanent custody trial to give him additional time to comply with his case plan. Appellant asserts that the juvenile court's denial of his motion was an abuse of discretion and unreasonable because a parent's right to raise a child is fundamental and should be afforded every procedural and substantive protection of the law.
 {¶ 16} The power of the trial court in a juvenile proceeding to grant or deny a continuance under Juv.R. 23 is quite broad and is reviewed under an abuse of discretion standard. In the Matter of Daniel K., 6th Dist Nos. OT-02-025, OT-02-023, 2003-Ohio-1409, at ¶¶ 23-26. Juv.R. 23 states that "Continuances shall be granted only when imperative to secure fair treatment for the parties." The Third District Court of Appeals held that it was not an abuse of discretion to deny a parent's motion to continue the permanent custody trial, to give the parent more time to complete a case plan, when the parent did not begin to comply with the case plan until after the motion for permanent custody was filed. In re Miller, 3d Dist. No. 2-04-02, 2004-Ohio-3023, ¶¶ 7-8.
 {¶ 17} In this case, we find that the juvenile court did not abuse its discretion by denying appellant's motion for continuance of the permanent custody trial in order to *Page 8 
allow appellant additional time to comply with his case plan. Appellant failed to follow through with substance abuse treatment in November 2004, as recommended, and failed to seek a diagnostic assessment until after LCCS had filed a motion for permanent custody. Appellant testified that he did not attempt to comply with the case plan because LCCS led him to believe that no effort he made would enable him to regain custody of his children, having already lost his rights to Andrew. Nevertheless, we find that it was not an abuse of discretion for the trial court to deny appellant's request for a continuance under the circumstances in this case. Accordingly, we find appellant's first assignment of error not well-taken.
 {¶ 18} Appellant argues in his second assignment of error that the trial court erred when it denied the paternal grandfather's motion to intervene. Appellant asserts that LCCS failed to present clear and convincing evidence that no suitable relative was available for placement because the children's paternal grandfather sought custody. By denying the paternal grandfather's motion to intervene, and thus, not considering his motion for custody, appellant argues that the trial court failed to consider the interaction and interrelationship of the children with their grandfather, as required by R.C. 2151.414(B)(1) and (D), when determining the children's best interests.
 {¶ 19} The decision to grant permissive intervention, pursuant to Civ.R. 24(B), rests within the sound discretion of the court and will not be overturned absent an abuse of that discretion. In re Stapler
(1995), 107 Ohio App.3d 528, 531. An abuse of discretion is more than an error of law or of judgment, the term connotes that the court's *Page 9 
attitude is unreasonable, arbitrary, or unconscionable. In re adoptionof Charles B. (1990), 50 Ohio St.3d 88, 94.
 {¶ 20} The paternal grandfather is not within the definition of "party" as that term is defined by Juv.R. 2(Y).[1] See In re: AasiyahT., 6th Dist. No. L-04-1235, 2005-Ohio-667, ¶ 6; and In re Schmidt
(1986), 25 Ohio St.3d 331, 336. He is not the children's spouse, parent, custodian, guardian, or guardian ad litem. LCCS gave him the children on September 28, 2004, for approximately one and one-half days, after they were removed from their parents' custody. However, following a shelter care hearing on September 29, 2004, LCCS was granted temporary custody of the children. In particular, the juvenile court found that LCCS had attempted "to find relatives who could and would protect and provide for these children," but found that "such efforts were not sufficient to prevent removal." The children were then retrieved from the grandfather and placed in foster care.
 {¶ 21} At the permanent custody trial, the paternal grandfather testified that he was not told why the children could not stay with him, but he believed that LCCS considered him a "flight risk." This court, however, finds that LCCS never raised "flight risk" as a basis for not allowing him to keep the children. Rather, in responding to the motion to intervene, LCCS argued that the paternal grandfather would not be an appropriate *Page 10 
placement because appellant had been living with the grandfather when Andrew was diagnosed with non-organic failure to thrive and taken from appellant. Further, LCCS argued that it had attempted to contact the grandfather on three occasions to investigate his current suitability for placement, but he had not responded. At trial, the grandfather testified that appellant was living with him at the time LCCS removed Andrew from appellant's care. Additionally, he testified that he was not Andrew's primary caregiver and did not "make the calls on things," but he made sure that Andrew "got what he needed," which included getting him to his doctor's appointments.
 {¶ 22} Based on the foregoing, we find that the children's paternal grandfather was not a party to the action and did not have a right to intervene pursuant to Civ.R. 24(A), as he did not have any protected legal interest related to the children's care and custody. We therefore find that the juvenile court did not abuse its discretion by denying the grandfather's motion. We further find that appellant did not demonstrate that the trial court failed to consider the factors in R.C.2151.414(B)(1) when determining the children's best interests. Accordingly, we find appellant's second assignment of error not well-taken.
 {¶ 23} Appellant argues in his third assignment of error that the trial court erred when it admitted evidence of prior bad conduct in violation of Evid.R. 404(A). Specifically, appellant argues that the trial court should not have considered the fact that appellant's rights were terminated as to Andrew because Jordan and Callie do not suffer from non-organic failure to thrive. Appellant asserts that his "inability to care for Andrew under those conditions do not translate into evidence of lack of ability to care for *Page 11 
Callie and Jordan, who do not suffer from non-organic failure to thrive." Also, appellant argues that his "prior acts" with respect to Andrew "should not be used to show that he was acting in conformity with them in the present case" because the parental burdens and challenges experienced by appellant when raising a child such as Andrew are not present with respect to Jordan and Callie. Appellant further argues that, just as appellant's inability to care for Andrew was not relevant to his ability care for Jordan in 2001, it should not be an issue in the present case.
 {¶ 24} We find appellant's reliance on Evid.R. 404(A) is misplaced. When determining a motion for permanent custody, R.C. 2151.414(E)(11) requires the trial court to consider all relevant evidence and, if the trial court determines by clear and convincing evidence that "[t]he parent has had parental rights involuntarily terminated * * * with respect to a sibling of the child," the court "shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." Accordingly, we find that the trial court did not abuse its discretion in considering the evidence of appellant's prior termination action and did not erroneously consider Evid.R. 404(A) evidence. Appellant's third assignment of error is therefore found not well-taken.
 {¶ 25} In his fourth assignment of error, appellant argues that the trial court's decision was against the manifest weight of the evidence. According to appellant, LCCS's caseworker stated three bases for pursuing permanent custody of Jordan and Callie: (1) appellant previously lost custody of a child; (2) appellant had not completed *Page 12 
his case plan; and (3) the children had been in LCCS's care for almost two years. Appellant argues that these reasons are insufficient to award permanent custody to LCCS and that LCCS failed to establish through clear and convincing evidence that it would be in the children's best interest to award permanent custody.
 {¶ 26} Specifically, appellant argues that, although there was "clear and convincing evidence against the mother, who lives separate and apart from appellant," LCCS failed to prove that he could not provide a safe environment for the children. Appellant states that he "should not be tarnished" with the "sins" of the children's mother and that, but for the mother's actions, he would not have been obliged to comply with a case plan. Appellant also argues that the fact that he did not complete his case plan prior to trial does not constitute clear and convincing evidence that his parental rights should be terminated because (1) he was discouraged by LCCS informing him that, regardless of his compliance with the case plan, he was not going to receive custody of his children, and (2) although he had not completed his case plan prior to trial, he had been assessed, had begun counseling, and was scheduled to begin parenting classes. Appellant further argues that the termination of his parental rights with respect to Andrew is irrelevant in this case because, unlike Andrew, neither Callie nor Jordan suffers from non-organic failure to thrive. Because the circumstances with Andrew were "uniquely dissimilar" from this case, appellant argues that it was not germane and should not have been considered when determining whether he could appropriately care for Callie and Jordan. *Page 13 
 {¶ 27} All findings by the trial court with respect to a motion for permanent custody must be supported by clear and convincing evidence. R.C. 2151.414(B); In re William S. (1996), 75 Ohio St.3d 95, 100. R.C.2151.414(B)(1)(d) states that permanent custody may be granted if, by clear and convincing evidence, the trial court finds that it is in the best interests of the children to grant permanent custody to LCCS and the children have been in the temporary custody of LCCS for 12 or more months of a consecutive 22 month period. An appellate court will not overturn the judgment as against the manifest weight of the evidence if the record contains competent credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established.In re S (1995), 102 Ohio App.3d 338, 344-345; Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 28} Pursuant to R.C. 2151.353(A)(4), if a child is adjudicated an abused, neglected, or dependent child, the trial court may make an order of disposition committing the child to the permanent custody of LCCS if it determines, in accordance with R.C. 2151.414(E), that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance R.C. 2151.414(D) that the permanent commitment is in the best interest of the child. In making the determinations required by R.C.2151.353(A)(4), a written report of the guardian ad litem of the children must be submitted to the court prior to or at the time of the hearing. R.C. 2151.414(C). *Page 14 
 {¶ 29} When determining the best interests of the children, the court must consider all relevant factors, including, the interaction and interrelationship of the child with the child's parents, relatives, and foster caregivers; the custodial history of the children; the children's need for a legally secure permanent placement and whether such placement could be achieved without a grant of permanent custody to the agency; and whether any factors in R.C. 2151.414(E)(7) to (11) apply to appellant and the children. R.C. 2151.414(D)(1)-(5). In particular, the factor set forth by R.C. 2151.414(E)(11) is whether "[t]he parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child." If the juvenile court determines by clear and convincing evidence that one or more of the factors contained in R.C.2151.414(E) exist as to each of the children's parents, the juvenile court must enter a finding that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(E).
 {¶ 30} In this case, we find that there was competent, credible evidence upon which the trial court could have relied in finding that it was in the children's best interest to grant permanent custody to LCCS. The children were adjudicated abused and dependent on November 9, 2004, and remained in the temporary custody of LCCS continuously through the permanent custody trial, a period of approximately 18 months.
The children were in their mother's care when Callie's clavicle was broken and neither parent disputes that the mother's parental rights were properly terminated. *Page 15 
 {¶ 31} With respect to appellant, we recognize that appellant visited his children on a weekly basis while they were in LCCS's temporary custody and that appellant offered mitigating reasons for his failure to complete his case plan prior to trial. Nevertheless, appellant failed to complete his case plan during the 18 months the children were in temporary custody. Moreover, the juvenile court did not find credible appellant's explanation for failing to comply with the case plan and did not excuse this failure. Given the length of time involved, we are also not inclined to overlook appellant's failure to pursue the case plan. Additionally, even though Andrew had a medical condition that Jordan and Callie do not have, we find that the juvenile court was statutorily required to consider the fact that appellant had his parental rights involuntarily terminated with respect to a sibling of the children in this case. See R.C. 2151.414(E)(11). Finally, although appellant was not there when Callie was injured, appellant was aware that the children's mother did not feel capable of handling them, yet did not do more to protect them while they were still in his care and custody. Appellant's fourth assignment of error is therefore found not well-taken.
 {¶ 32} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 16 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J. and Arlene Singer, J. CONCUR.
[1] Juv.R. 2(Y) states: "`Party' means a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court." *Page 1