[Cite as *In re B.R.*, 2015-Ohio-293.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

In re B.R.

Court of Appeals No. H-14-014

Trial Court No. DNA 2013 00065

**DECISION AND JUDGMENT**

Decided:    January 28, 2015

* * * * *

Melissa A. Angst, for appellant.

Russell Leffler, Prosecuting Attorney, and
Dina Shenker, Assistant Prosecuting Attorney, appellee.

* * * * *

**YARBROUGH, P.J.**

## I. Introduction

**{¶ 1}** This is an appeal from the judgment of the Huron County Court of Common

Pleas, Juvenile Division, terminating the parental rights of J.R. ("mother"), and awarding

permanent custody of the minor child, B.R., to appellee, Huron County Department of Job and Family Services ("Department").[1] For the reasons that follow, we affirm.

## A. Facts and Procedural Background

{¶ 2} B.R. was born on August 19, 2013, at Firelands Hospital in Sandusky, Ohio. At the time of her birth, B.R. immediately showed signs of withdrawal from opiates. Mother submitted to a drug screen and tested positive for heroin, hydromorphone, and morphine.

{¶ 3} A shelter care hearing was held on August 21, 2013, resulting in B.R. being placed in the temporary custody of the Department. Mother was informed of the hearing, but was not present. In early September 2013, mother was arraigned on charges of trafficking in heroin and possession of heroin. Following her arraignment, mother remained incarcerated at the Huron County Jail.

{¶ 4} On September 25, 2013, B.R. was adjudicated abused and dependent. A dispositional hearing was held on October 31, 2013, from which the court ordered that temporary custody of B.R. be continued with the Department. Mother was not afforded any visitation rights while she was incarcerated. On November 27, 2013, mother pleaded guilty to possession of heroin, and was sentenced to one year in prison, with a scheduled release date of September 20, 2014. Mother was subsequently removed from the case plan because of her incarceration.

---

[1] S.D., the father, has voluntarily surrendered his parental rights and is not a party to this appeal.

2.

**{¶ 5}** On April 22, 2014, the Department filed its motion for permanent custody, and a hearing was scheduled for August 14, 2014. On July 31, 2014, mother moved to continue the hearing until after she would be released from prison and would have an opportunity to be added to the case plan. The trial court denied the motion.

**{¶ 6}** At the hearing on August 14, 2014, mother renewed her motion for a continuance so that she would have an opportunity to work on the case plan. The Department opposed the motion, arguing that mother has a history of not completing case plans, and expressing its confidence that mother will not work the current case plan either. Further, the Department mentioned that mother is a complete stranger to B.R., and has not had any contact with her since B.R. was two days old. Upon hearing the arguments, the trial court again denied the motion. The court reasoned that the Department is seeking permanent custody on the basis that B.R. cannot or should not be returned to mother within a reasonable period of time, and if the Department could prove that by clear and convincing evidence, "then that would emphasize why the Court's not granting your motion for continuance here today."

**{¶ 7}** The hearing began, and the Department called as its first witness Carrie Bischoff, a Department social worker. Bischoff testified that she was assigned the case on August 20, 2013, when the Department learned that B.R. had been born addicted to opiates. Bischoff informed mother of the shelter care hearing, and informed her that she would have to petition the court if she would like visitation with B.R. Bischoff testified

3.

that mother did not contact her to ask about B.R., or petition the court for any type of visitation. Further, Bischoff stated that she visited mother once while mother was still in the Huron County Jail, and that mother inquired about B.R. at that time, but that Bischoff did not hear from mother after she was transferred to prison following her sentencing hearing. Bischoff also explained that mother was not only serving her sentence from the September 2013 heroin conviction, but that she was also concurrently serving a one-year term for violating the terms of her post-release control on another drug conviction from 2009.

{¶ 8} Regarding mother's conduct in 2009, Bischoff testified that is when mother lost legal custody of her two older children. Bischoff described that the Department became involved with the older two children when mother took her infant son with her on a drug run. Bischoff testified that mother never successfully completed the 2009 case plan; in particular, she was not able to maintain sobriety and keep her children in a safe, stable, substance-free environment.

{¶ 9} Bischoff stated that the older two children were placed in the legal custody of relatives, but she did not recommend similarly placing B.R. in the custody of relatives because she had concerns that the relatives were allowing the oldest child to live with mother and be exposed to illegal substances. Bischoff testified that B.R. was currently in a safe, loving foster home, and that the foster parents were very interested in adopting B.R. According to Bischoff, B.R. was doing very well, was not showing any signs of

4.

developmental delays, and was very bonded to her caregivers. Ultimately, Bischoff recommended that permanent custody of B.R. be awarded to the Department with the intent being that B.R. would be adopted by her foster parents.

{¶ 10} The Department next called Shirlean Smith, B.R.'s guardian ad litem, and had her report entered into evidence. Smith testified that she initially contacted mother while she was in the Huron County Jail, but that mother has not reached out to her since. Smith also testified that B.R. was doing very well in her placement, and that she is with a supportive and loving family. Smith then expressed concern regarding the possibility that B.R. might be reunified with mother in light of mother's previous conduct with her older children and mother's engagement in drug activity. Smith concluded that B.R. is in the best possible placement. Smith admitted on cross-examination, however, that mother did not have an opportunity to work through a case plan to remedy the problems of substance abuse and providing a safe and stable environment.

{¶ 11} Following Smith, the Department rested. Mother then testified on her own behalf. Mother stated that she was due to be released on September 20, 2014, and that she would no longer be subject to parole supervision at that time. Mother testified that after her first drug conviction she became clean and was on the road to recovery, but then while she was pregnant with B.R. a doctor prescribed her painkillers, which led her to relapse. She testified that she had been attending alcoholics anonymous and narcotics anonymous meetings in prison and that she intended to continue those meetings after her

5.

release. Mother's plan would be to reside with her aunt, who runs a strict Christian home, and to begin to put her life back together. Regarding the lack of contact with B.R, mother testified on cross-examination that she was under the impression she had no opportunity to get visitation while she was in prison, and that she did not have the means to contact the Department because of the way the phone system worked in prison. Mother testified that she is willing to do whatever it takes to be a part of B.R.'s life, and that she thinks it is in B.R.'s best interest to delay permanent custody while mother has an opportunity to utilize case plan services.

{¶ 12} After the hearing, the trial court entered its decision on August 21, 2014, in which it found by clear and convincing evidence that B.R. could not be placed with mother within a reasonable time and should not be placed with mother because of mother's chronic and severe chemical dependency as referenced in R.C. 2151.414(E)(2). Further, upon consideration of the factors in R.C. 2151.414(D), the trial court found by clear and convincing evidence that it would be in the best interests of B.R. to grant permanent custody to the Department. Therefore, the trial court granted the Department's motion for permanent custody.

## B. Assignments of Error

{¶ 13} Mother has timely appealed the trial court's judgment terminating her parental rights, and now raises one assignment of error for our review:

> The trial court erred by not granting Mother a reasonable continuance of the trial for permanent custody. Furthermore, the trial court

6.

erred by granting the Motion for Permanent Custody as it was against the manifest weight of the evidence because Child could be reunified with Mother within one year after the hearing. Additionally, the trial court's decision to grant the motion is not in the best interest of the Child.

## II. Analysis

{¶ 14} Mother's assignment of error consists of three parts, which we will address in turn.

### A. The Trial Court's Denial of Mother's Request for a Continuance was not an Abuse of Discretion.

{¶ 15} In the first part, mother contends that the trial court abused its discretion when it denied her request for a continuance. Juv.R. 23 provides, "Continuances shall be granted only when imperative to secure fair treatment for the parties." We have stated, "The power of the trial court in a juvenile proceeding to grant or deny a continuance under Juv.R. 23 is quite broad and is reviewed under an abuse of discretion standard." *In re Jordan B.*, 6th Dist. Lucas No. L-06-1161, 2007-Ohio-2537, ¶ 16. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 16} Mother argues that the trial court should have granted her request for a continuance for four reasons. First, she had a legitimate reason to request the continuance in that she was asking for time to be placed on the case plan after her release

7.

from prison so that she could work towards the goal of reunification. Mother noted that she had already been participating in alcoholics anonymous and narcotics anonymous, that she had a sponsor to help her maintain her sobriety, and that she had stable housing in place for when she was released. Second, no other continuances had been requested or granted, and the trial court, litigants, and witnesses would not have been inconvenienced by a delay. Third, the two witnesses called by the Department were parties to the case, and there was no additional medical or expert testimony required or subpoenaed for the hearing. Finally, the motion for permanent custody was filed less than one year after B.R. was born, and B.R. would have no knowledge that the continuance was granted. Moreover, during the period of the continuance, B.R. would remain in a safe and secure placement. Mother contends that she was prejudiced by the failure to grant a continuance because she had no opportunity to be placed on a case plan and work towards reunification.

{¶ 17} The Department, on the other hand, opposed the continuance because, at the time of the hearing, B.R. was already one year old and has had no interaction with her mother since two days after her birth. Further, the Department noted that mother had a history of not working case plans with her previous children.

{¶ 18} In this case, we find that the trial court did not abuse its discretion in denying mother's motion for a continuance to allow her additional time to comply with the case plan. Mother took no steps to visit or contact B.R. prior to her incarceration,

8.

infrequently spoke with the social worker while she was in jail, and then made no effort to contact the Department, the court, or her attorney regarding B.R. while in prison. Moreover, the trial court reasoned that the Department had the burden to prove that B.R. could not within a reasonable time, or should not, be placed with mother, and if it successfully proved that, it would underscore the fact that additional time would not allow mother to be reunified with B.R. We do not find the trial court's reasoning to be unreasonable, arbitrary, or unconscionable, and we therefore defer to the broad power of the trial court to deny mother's motion for a continuance. Accordingly, the first portion of mother's assignment of error is without merit.

### B. The Trial Court's Finding that Mother Cannot Provide an Adequate Home for B.R. Because of Mother's Chronic Chemical Dependency is not Against the Manifest Weight of the Evidence.

{¶ 19} In the second part of her assignment of error, mother argues that the finding that B.R. could not be reunified with mother within a reasonable time, or should not be reunified with mother, was against the manifest weight of the evidence.

{¶ 20} In order to terminate parental rights and award permanent custody of a child to a public services agency under R.C. 2151.414, the juvenile court must find, by clear and convincing evidence, two things: (1) that one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(d) apply, and (2) that permanent custody is in the best interests of the child. R.C. 2151.414(B)(1). Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to

9.

be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. The clear and convincing standard requires more than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. *Id.*

{¶ 21} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *Id.*, citing *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 22} R.C. 2151.414(B)(1)(a) provides that a trial court may grant permanent custody of a child to the agency if it finds that, in addition to the placement being in the best interest of the child,

> The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive

twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

R.C. 2151.414(E) requires a trial court to find that a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with either parent if any of sixteen factors are met. Relevant here is R.C. 2151.414(E)(2), which enumerates:

Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code.

{¶ 23} Here, mother argues that there is no evidence that she will be unable to support her child within one year of the hearing. She contends that although she was in prison for her second drug offense, four years had elapsed between the two offenses. Further, she participated in substance abuse counseling while in prison, she has a sobriety sponsor, and she has a stable home to reside in once she is released from prison.

{¶ 24} In reaching its decision, the trial court relied on the fact that mother has suffered from opiate addiction since 2009, that she has had two other children removed from her care and placed in the legal custody of relatives because she was unable to maintain her sobriety as required in the case plan, that she was convicted of a second

felony drug charge for which she was concluding a one-year prison sentence, and that she consumed heroin, morphine, and hydromorphone at an advanced stage of her pregnancy. Upon our consideration of the record, we agree with the trial court's conclusion that mother would be unable to provide an adequate permanent home for B.R. within one year of the hearing. Therefore, we hold that the trial court's decision is not against the manifest weight of the evidence. Accordingly, mother's second argument is without merit.

### C. The Trial Court's Finding that Permanent Custody to the Department is in B.R.'s Best Interest is not Against the Manifest Weight of the Evidence.

{¶ 25} In the third part of her assignment of error, mother argues that granting custody of B.R. to the Department is not in B.R.'s best interest.

{¶ 26} R.C. 2151.414(D)(1) provides, in pertinent part,

In determining the best interest of a child * * * the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a

consecutive twenty-two-month period, * * *;

(d) The child's need for a legally secure permanent placement and

whether that type of placement can be achieved without a grant of

permanent custody to the agency.

**{¶ 27}** Mother acknowledges that she has had limited contact with B.R. due to her incarceration. However, mother notes that B.R. has been in more than one foster home since temporary custody was awarded to the department, and that no prospective adoptive parent testified at trial regarding his or her long-term intentions. In addition, mother points out that B.R. did have contact with her maternal grandmother and half-sister while in the Department's custody.

**{¶ 28}** Nevertheless, we do not find that the trial court's decision is against the manifest weight of the evidence. Both the Department case worker and guardian ad litem testified that B.R. was well-bonded with her foster parents, that she was thriving in their care, and that the foster parents intended to adopt B.R. Further, B.R. has been in the custody of the Department since birth, has had no contact with mother, and has had very limited contact with the maternal grandparent and half-sister. Therefore, we find no merit to mother's third argument.

**{¶ 29}** Accordingly, mother's assignment of error is not well-taken.

### III. Conclusion

**{¶ 30}** For the foregoing reasons, the judgment of the Huron County Court of Common Pleas, Juvenile Division, is affirmed. Mother is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

Stephen A. Yarbrough, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.