[Cite as *In re M.J.*, 2013-Ohio-5440.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100071**

# IN RE: M.J. and C.S.
# Minor Children

[Appeal By K.S., Mother]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 11907820 and AD 11907821

**BEFORE:** Kilbane, J., Boyle, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 12, 2013

**ATTORNEY FOR APPELLANT**

R. Brian Moriarty
R. Brian Moriarty, L.L.C.
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEES**

**For C.C.D.C.F.S.**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Susan M. Walters
Assistant Prosecuting Attorney
C.C.D.C.F.S.
4261 Fulton Parkway
Cleveland, Ohio 44144

**For Guardian Ad Litem for Child**

Thomas Kozel
P.O. Box 534
North Olmsted, Ohio 44070

**For Guardian Ad Litem for Mother**

Suzanne Piccorelli
255 Falmouth Drive
Rocky River, Ohio 44116

MARY EILEEN KILBANE, J.:

**{¶1}**   Appellant, K.S., the mother of M.J. and C.S., appeals from the order of the juvenile court that awarded permanent custody of  M.J. and C.S. to the Cuyahoga County Department of Children and Family Services ("CCDCFS").  For the reasons set forth below, we affirm.

**{¶2}**   Appellant has a lengthy history with CCDCFS.  She began receiving services from CCDCFS in 1994.  She has had ten children, and three have previously been placed in the permanent custody of CCDCFS.  M.J. was born on January 31, 2009.  Protective supervision was ordered on February 9, 2009, because of appellant's drug usage and her history with CCDCFS.  Thomas Kozel was appointed guardian ad litem ("GAL") for the child at this time.  C.S. was born on May 17, 2010, and protective supervision was also ordered immediately after his birth.  Protective supervision of M.J. terminated by operation of law on February 9, 2011.  On April 29, 2011, CCDCFS filed a complaint for temporary custody, alleging that the children were neglected and that

> 1.  Mother has a 20 year history of substance abuse, specifically crack cocaine, that interferes with her ability to care for her children.  Mother has attended four treatment programs since January 2010 and has been unable to maintain her sobriety.  Mother had a hair follicle test in February 2011 and a urine screen in April 2011 that was positive for cocaine.
>
> 2.   Mother has an extensive history with CCDCFS[,] having 8 other children removed from her care.  Currently, a sibling of the children is in CCDCFS custody.  * * *
>
> 3.   Mother does not consistently follow through with * * * case management services  * * *.

* * *

5.  Mother and [father of M.J.] have a history of domestic violence.
6. [Father of M.J.] has a substance abuse problem * * *. He has been recommended for substance abuse treatment but has not participated in treatment * * * has not established paternity and does not support his child.

* * *

9.  Alleged father of C.S., John Doe, has not established paternity and does not support or visit his child.

**{¶3}** Following a probable cause hearing for both children on May 23, 2011, the trial court noted that CCDCFS had made reasonable efforts to return the children to their home. Appellant participated in six drug-treatment programs, but continued to test positive for drugs in April 2011 and had a "possibly adulterated test" on May 20, 2011. The court found probable cause for removing the children and found that their return to the home would be contrary to their best interest and welfare. The court granted temporary custody to CCDCFS pending the dispositional hearing. The dispositional hearing was held on July 11, 2011. Following this hearing, the children were adjudicated to be neglected and were placed in the temporary custody of CCDCFS until April 29, 2012.

**{¶4}** On January 26, 2012, CCDCFS filed a motion to modify the temporary custody award to permanent custody. In relevant part, CCDCFS asserted that the children had been in temporary custody since July 11, 2011, that mother's rights to another child had been involuntarily terminated and that

6. A case plan was filed with the Juvenile Court * * * which required that mother complete a drug and alcohol assessment and drug treatment, mental health counseling, domestic violence counseling, and parenting education classes.

7. A case plan was filed with the Juvenile Court * * * which required that father * * * complete a drug and alcohol assessment and drug treatment, domestic violence services, and establish paternity for M.J.

* * *

9. Mother has completed six substance assessments and two intensive outpatient treatment programs. However, mother has been unable to maintain her sobriety, testing positive for cocaine as recently as November of 2011. Mother has failed to complete any drug screens * * * parenting classes * * * [and] domestic violence services.

{¶5} The GAL submitted a written report recommending that permanent custody be awarded to CCDCFS.

{¶6} The matter was scheduled for trial on October 23, 2012. The matter was twice continued until April 16, 2013, on motion of M.J.'s father. On that date, at the commencement of the hearing, counsel for the father moved for an additional continuance, and appellant made an oral motion to seek an independent hair follicle test. The trial court denied the motions and proceeded with the trial. CCDCFS presented testimony from Tanya Spraggins ("Spraggins"), social worker for CCDCFS, and Julie Bugaj ("Bugaj"), operations manager for Advantage Health Care ("Advantage").

{¶7} Spraggins testified that the county's case file for appellant demonstrates CCDCFS's involvement since 1994 because of appellant's chronic substance abuse. One of appellant's ten children is deceased, one is emancipated, and she does not have custody of any of the other children. CCDCFS was awarded permanent custody of three

of the children. Appellant did not receive county parenting services from 2007 to 2009, a period when she had no children in her care. Spraggins was assigned to this case on January 31, 2009, following the birth of M.J. Both M.J. and C.S. have been in county custody since May 2011.

{¶8} Spraggins further testified that appellant, who was 40 years old at the time of trial, has abused cocaine since she was 14 years old. Spraggins identified concerns with appellant's emotional stability, parenting, substance abuse, and domestic violence as key concerns barring reunification. CCDCFS referred appellant to the Mothers and Children Together Parenting Program, domestic violence counseling, and she had been ordered by the juvenile court to participate in Intensive Outpatient Program ("IOP") to address her drug abuse. The children were referred to the Help Me Grow program, and the ultimate goal of the county's case plan was reunification. Appellant is also in counseling for depression and post traumatic stress disorder. Appellant completed a seven-week parenting class and a seven-week domestic violence class.

{¶9} According to Spraggins, appellant completed the IOP program mandated by the court, but she did not consistently comply with the substance abuse referrals. In 2009, appellant informed Spraggins that she had relapsed. Appellant was again referred to IOP, but she was eventually discharged for nonattendance. CCDCFS arranged mental health and substance abuse counseling for appellant, but she was again "unsuccessfully discharged." Another inpatient treatment referral was made in 2010, but appellant did not complete it. Appellant did complete a residential treatment program in August 2010,

but did not complete the aftercare program. Appellant had negative drug screen tests at this point, but CCDCFS became concerned that the urine sample had been adulterated so it requested a hair follicle test. Appellant refused the hair follicle test, but she was eventually ordered by the court to submit. By February 2011, appellant was not cooperating with her case plan, and drug screens conducted in March and April 2011 were both positive for cocaine. She failed to report for an IOP program in May 2011 and was discharged from other IOP programs in August 2011 and June 2012. Appellant completed an IOP program and aftercare by March 2013, but hair follicle tests from January and April 2013, reflecting the preceding three months, were again positive for drug use. The urine drug screens during this time were negative, however.

{¶10} The father of C.S. was not identified. Various referrals were made by the court for the father of M.J., but he did not comply. Other relatives were not able to take custody of the children and, therefore, the children were placed with a foster mother who has since relocated. They are now together with another foster mother and, following a rocky transition period, are doing well. The foster mother is attentive and supportive.

{¶11} Spraggins also testified that appellant has biweekly visitation with the children and has not missed any scheduled visitation. During the two-hour supervised visitation, appellant's behavior is appropriate, and she displays genuine affection for her children. Appellant does not have any income, however, but for financial assistance from an unrelated male, and she has used all of her allotted government assistance. According to Spraggins, the award of permanent custody to CCDCFS is in the best

interest of the children.

**{¶12}** Bugaj testified that hair follicle tests generally cover the 90-day period preceding the test. Donors are given the opportunity to inform Advantage of any medications that may interfere with the test results, but false positives are less likely with cocaine use as opposed to opiate use. Hair follicle tests from January and April 2013 were positive for cocaine use and, according to Bugaj, these test results undermine appellant's claim that she last used cocaine in September 2012. Although urine screens have been negative since September 2012, Bugaj noted that cocaine is dissipated from the urine approximately 72 hours after use.

**{¶13}** Appellant testified on her own behalf and presented testimony from Martin Collins ("Collins"). Collins testified that he has known appellant for 17 years and is the father of two of her children. He testified that he lives with her when he is in the area. According to Collins, appellant is no longer using drugs. She goes to AA meetings, is in school, and her habits and personality have improved since she stopped taking drugs. He admitted, however, that one of the children that they have together is in the permanent custody of CCDCFS.

**{¶14}** Appellant testified that she last used drugs in September 2012 and is now a changed person. She acknowledged her past failures at sobriety and explained that she simply had not been ready to change. As to the positive hair follicle tests, she stated that her hair grows very slowly.

**{¶15}** Kozel testified that appellant appears to be trying to overcome her addiction

but still has mental health issues. He noted that consistency is crucial and that one must be cautious in dealing with drug addicted persons because their claims may not be credible. Kozel also noted that the children have been in county custody for almost two years, and he reiterated his earlier recommendation that CCDCFS be awarded permanent custody.

{¶16} On April 22, 2013, the court found that the parents failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home. The court concluded that the children could not be placed with the parents within a reasonable time because of chronic chemical dependency issues and that they had rejected treatment, placing the children at substantial risk. The court also noted that the children were doing well in foster care and were bonded with their foster mother. The court concluded that there was clear and convincing evidence to establish that the award of permanent custody to CCDCFS is in the best interest of the children. The court stated:

> The social worker has been on this case since 2009. The testimony established that the mother has been involved with CCDCFS because of her drug use since 1994. There was a two-year period of time [from 2007-2009] where she was not involved with CCDCFS because she had lost custody of all of her children * * *. Then M.J. was born on January 31, 2009 and CCDCFS again became involved because of the mother's history with CCDCFS and because of her drug use. Protective supervision was granted in this case in 2009. C.S. was born on May 17, 2010. Emergency temporary custody was granted on May 23, 2011, because the two-year time limit for protective supervision had literally run out. When mother tested positive for drugs in March and April of 2011, a complaint requesting temporary custody was filed and the children were removed. They have been in the custody of CCDCFS continuously since that time, nearly two years ago.

The mother has eight other children ages five to twenty-one, [none of whom are] in her care and custody. She lost custody of them because of her drug use. Three of them went into the permanent custody of CCDCFS. * * * She's been using drugs since she was fourteen years old; she is now forty years old. She has a substance abuse problem that has lasted for twenty-six years.

The Court denies the request for [an independent] hair follicle test because even if it were to come back clean, it would not change this Court's Decision just as it did not change the [GAL's] recommendation that permanent custody is in the best interest of these children. * * * The mother has not shown * * * that she can provide a legally secure placement and adequate care for the health, welfare, and safety of these children. There have been six referrals for chemical dependency treatment * * * and her sobriety remains a concern.

{¶17} Appellant now appeals, assigning the following two errors for our review.

Assignment of Error One

The trial court abused its discretion in denying Appellant's motion to continue.

{¶18} The juvenile court is vested with broad discretion to grant or deny continuances, and this decision is reviewed under an abuse of discretion standard. *In re Jordan B.*, 6th Dist. Lucas No. L-06-1161, 2007-Ohio-2537, ¶ 16; *In re A.C.*, 6th Dist. Lucas No. L-10-1025, 2010-Ohio-4933, ¶ 127.

{¶19} Pursuant to Juv.R. 23, "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." Juv.R. 29(A) states in part that "upon a showing of good cause, the adjudicatory hearing may be continued and detention or shelter care extended."

{¶20} Loc.R. 49, entitled "Continuances and Advancements" provides as follows:

(A)    Requests for continuances or advancements will be made in accordance with Superintendence Rule 41 and Juvenile Rules 19 and 23. All requests for continuances or advancements shall be filed with the Clerk of Court and submitted to the assigned jurist in writing at the earliest time possible, no less than seven (7) working days before the day of trial or hearing.  The Court shall set a date certain for the next hearing date upon the granting of a continuance.

(B)   All requests for continuances shall contain the following information:

(1)   The date on which the need for the continuance arose;
(2)   The reasons for requesting the continuance;
(3)   The date on which all other attorneys of record and guardians ad litem on the case were contacted, and whether these attorneys and guardians ad litem agree on the need for a continuance; and,
(4)   The earliest date that all parties will be ready to proceed.

( C )   No case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing, and provided that the party and/or counsel have used diligence to be ready for trial and have notified or made diligent efforts to notify the opposing party or counsel as soon as he/she became aware of the necessity to request a postponement.  This rule may not be waived by consent of counsel.

{¶21} The trial court's decision must comport with due process, however.  *In re A.C.*, 6th Dist. Lucas No. L-10-1025, 2010-Ohio-4933, ¶ 128.  Accordingly, a balancing test must be employed in which a trial court's right to control its own docket and the public's interest in an efficient judicial system are weighed against any potential prejudice to the defendant.  *Id*., citing *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981).  Among other factors, a court should consider

the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a

continuance; and other relevant factors, depending on the unique facts of each case.

*Unger* at 67-68. *See also In re S.R.*, 6th Dist. Ottawa No. OT-09-024, 2010-Ohio-3073, ¶ 22.

**{¶22}** We find no abuse of discretion in this matter. The motion for a continuance did not meet the requirements of the juvenile rules or the local rules of court, as it was untimely, despite the fact that the positive results of appellant's last hair follicle test were provided to her counsel six days before trial. In addition, the motion did not contain the information required under Juv.R. 29, and the matter had already been continued on several prior occasions. Further, although appellant asserted that she had not used drugs since September 2012, the record establishes that the positive drug test results from January and April 2013 are incompatible with that contention. Appellant asserted that the last positive test result may have been because she takes prescription pain pills for dental issues, but the record shows that no medical explanation was offered when Advantage interviewed her immediately following the test results. Therefore, counsel did not demonstrate that the continuance was imperative to secure fair treatment for his client. The trial court also notified the parties that it would revisit the matter if necessary, but that "the case may or may not hinge on a hair sample." The court ultimately concluded, however, that "even if it were to come back clean, it would not change this Court's Decision just as it did not change the [GAL's] recommendation that permanent custody is in the best interest of these children." In accordance with all of the foregoing, the decision did not violate appellant's right to due process, reflected the

court's proper control of its docket and the public's interest in an efficient judicial system, and was not prejudicial to the defendant.

{¶23} The first assignment of error is without merit.

Assignment of Error Two

The trial court's order granting permanent custody to the CCDCFS was not based upon sufficient clear and convincing evidence.

{¶24} An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence. *In re A.S.*, 11th Dist. Lake Nos. 2012-L-058 and 2012-L-059, 2012-Ohio-4893.

{¶25} In order to terminate parental rights and grant permanent custody to CCDCFS, the court must apply a two-prong test. First, the court must find by clear and convincing evidence one of the factors set forth in R.C. 2151.414(B)(1). Second, the court must determine, by clear and convincing evidence, that it is in the best interest of the child to terminate parental rights. R.C. 2151.414(B)(2); *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 23.

{¶26} The factors under R.C. 2151.414(B)(1) include the following: (a) the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent; (b) the child is abandoned; (c) the child is orphaned and no relatives are able to take permanent custody of the child; or (d) the child has been in the temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period. In addition, R.C. 2151.414(E) sets forth

the elements necessary to satisfy an R.C. 2151.414(B)(1)(a) determination, by clear and

convincing evidence, that the child cannot or should not be placed with his parents within

a reasonable time, and provides in relevant part:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
>
> (2) Chronic * * * chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year * * *.
>
> * * *
>
> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
>
> * * *
>
> (9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued * * *.
>
> * * *
>
> (11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child.
>
> * * *

(16) Any other factor the court considers relevant.   (Emphasis added.)

**{¶27}** The existence of one factor alone will support a finding that the child cannot be reunified with the parents within a reasonable time.  *See In re William S.*, 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738; *In re C.F.* at ¶ 50.

**{¶28}** With regard to the requirement that it is in the best interest of the child to terminate parental rights, R.C. 2151.414(D)(1)(a) through (e) sets forth the relevant factors a court must consider in determining the best interest of the child and include, but are not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶29}** Only one of these enumerated factors needs to be resolved in favor of the award of permanent custody.  *In re D.W.*, 8th Dist. Cuyahoga No. 98717, 2013-Ohio-272; *In re Shaeffer Children*, 85 Ohio App.3d 683, 621 N.E.2d 426 (3d

Dist.1993); *In re C.H.*, 8th Dist. Cuyahoga Nos. 82258 and 82852, 2003-Ohio-6854.

{¶30} In this case, the trial court found, by clear and convincing evidence, that the children have been in the temporary custody for over two years, and that they cannot be placed with either parent within a reasonable period of time and should not be placed with either parent.

{¶31} As an initial matter, it is undisputed that appellant has previously had other children involuntarily removed from her custody. This factor alone would have supported the trial court's finding that M.J. and C.S. could not, or should not, be returned to her within a reasonable period of time. R.C. 2151.414(E)(11); *In re D.G.,* 8th Dist. Cuyahoga No. 99587, 2013-Ohio-3537, ¶ 16; *In re M.W.*, 8th Dist. Cuyahoga No. 91539, 2009-Ohio-121, ¶ 49. Moreover, where this factor is established, the burden is then on the parent to provide clear and convincing evidence to prove that, notwithstanding the prior termination, he or she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child. *In re E.A.*, 9th Dist. Medina No. 12CA0059-M, 2012-Ohio-5925, ¶ 14.

{¶32} The court met the requirements of R.C. 2151.414(B)(1) and R.C. 2151.414(E). In relevant part, the court noted that the appellant has had a twenty-six year history of substance abuse, has not completed case plan services, has failed to demonstrate sobriety, and her sobriety remains a concern. The court observed that appellant has had six referrals for drug treatment, and has lost custody of numerous

children.  R.C. 2151.414(E)(11).  In addition, the GAL also recommended that permanent custody be awarded to CCDCFS.  Appellant is adamant that she has been sober since September 2012, but there is testimony in the record that the positive hair follicle test results are incompatible with this claim, and further, that urine test results might also fail to detect usage that occurred over 72 hours earlier.

{¶33} In any event, successful completion of this aspect of the case plan is not dispositive on the issue of reunification, *In re D.G.,* 8th Dist. Cuyahoga No. 99587, 2013-Ohio-3537, ¶ 16.  Appellant acknowledged that "she has a long way to go." Moreover, there was no evidence that she could effectively parent two young children that she now sees only several hours a week while working on her sobriety.  Appellant also has other issues that impact her parenting.  Although appellant has consistently maintained visitation with the children and has a genuine desire for reunification, the great weight of the evidence clearly and convincingly indicates that she cannot provide a legally secure permanent placement for M.J. and C.S. and that they cannot be placed with her within a reasonable time.  Therefore, based upon our thorough review of the record, permanent custody was properly awarded to CCDCFS.

{¶34} Further, as required by R.C. 2151.414(D), the court concluded that it is in the best interest of the children to terminate parental rights.  The court considered the children's interactions and interrelationship with the appellant as well as their foster parents, the extensive custodial history of the children, their need for a legally secure placement, and whether that type of placement can be achieved without a grant of

permanent custody. The court found and the clear and convincing evidence demonstrates that the children are now with their second foster mother, that they had a difficult transition but are now doing well, and are bonded with the foster mother. The court also concluded, and the record clearly shows, that to return the children to appellant "who has not shown that she is safe, sober and able to provide a stable placement for these children over the last four years is not in their best interest." Based upon all of the evidence of record, the great weight of the evidence of record clearly and convincingly supports the judgment of the trial court.

{¶35} In accordance with the foregoing, the second assignment of error is without merit.

{¶36} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR