[Cite as *In re A.F.H.*, 2023-Ohio-1478.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE A.F.H. | : | |
| | : | No. 111816 |
| A Minor Child | : | |
| | : | |
| [Appeal by Mother, M.D.] | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** DISMISSED
**RELEASED AND JOURNALIZED:** May 4, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-19905167

---

### *Appearances:*

John H. Lawson, *for appellant*.

LISA B. FORBES, P.J.:

{¶ 1} M.D. ("Mother") appeals the juvenile court's order terminating her parental rights and awarding permanent custody of A.F.H.[1] to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or the "Agency").[2] On appeal,

---

[1] The juvenile court terminated Mother's parental rights to each of her three children at the dispositional hearing at issue in the appeal. However, this appeal concerns only A.F.H.

[2] A.F.H.'s alleged father's parental rights were also terminated, but the alleged father is not a party to this appeal.

Mother's counsel filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting that following an examination of the record there are no meritorious grounds for appeal. This court held the motion in abeyance to give appellant an opportunity to file a pro se brief. She did not do so. After conducting our own independent review, we grant counsel's motion to withdraw and dismiss the appeal.

## I.    Facts and Procedural History

{¶ 2}    A.F.H. was born on December 27, 2018. CCDCFS filed a complaint on April 26, 2019, alleging that A.F.H. was neglected and dependent because "Mother used cocaine during her pregnancy with A.F.H." The complaint further alleged that Mother had "completed treatment in the past and [was] on a methadone maintenance program" at the time the complaint was filed. In its complaint CCDCFS requested legal custody of A.F.H. to Mother with protective supervision to CCDCFS.

{¶ 3}    A.F.H. was adjudicated neglected and dependent on September 18, 2019. In its October 26, 2019 journal entry, the juvenile court ordered A.F.H. committed to the legal custody of Mother with protective supervision granted to CCDCFS.

{¶ 4}    Beginning in May 2020, CCDCFS took steps to address information it had received that A.F.H. was living with Mother in a motel in undesirable conditions. On July 1, 2020, the court granted CCDCFS's Motion for immediate

custody, awarding emergency temporary custody of A.F.H. to the Agency. CCDCFS was granted temporary custody of A.F.H. on September 27, 2020.

{¶ 5} CCDCFS filed a "motion to modify temporary custody to permanent custody" on January 22, 2021. The juvenile court held a disposition hearing on CCDCFS's motion on April 1 and 29, 2022 ("the Hearing").

{¶ 6} On July 15, 2022, the court journalized an entry terminating Mother's parental rights and granting permanent custody of A.F.H. to CCDCFS. It is from this order that Mother appeals.

## II. Dispositional Hearing

{¶ 7} At the Hearing, CCDCFS called the following six witnesses: Ercell Goodman, Mary Beth Cole, Aimee Shipman, Marty O'Sullivan, Tiesha Reed, and Amber Hunter. A.F.H.'s guardian ad litem John Stryker ("GAL") submitted several reports to the court over the course of the proceedings and gave a recommendation on the record at the Hearing. In addition, nine exhibits were admitted into evidence. The following testimony and information were presented at the Hearing.

### A. Ercell Goodman

{¶ 8} Ercell Goodman ("Goodman") is a chemical dependency counselor assistant for Community Action Against Addiction ("CAAA"), which is a methadone drug-treatment program. Mother was one of Goodman's clients at CAAA for three or four years at the time of the Hearing. As a client at CAAA, Mother "receives counseling. She receives group therapy, [intensive outpatient program] therapy if

she needs it." In addition, Mother "gets a therapeutic dose of methadone daily." According to Goodman, methadone helps people with opiate drug addiction.

{¶ 9} Goodman testified that he met with Mother twice each month. During that time, he took and kept notes regarding their counselling sessions. Portions of Mother's counseling records, which included drug screenings, counseling notes, and treatment plans, were admitted into evidence. According to Goodman, the records indicate that 50 percent of Mother's drug screenings from April 2020 to November 2021 were positive for alcohol, cocaine, and/or marijuana. Goodman acknowledged that in his experience it is normal for patients to relapse during treatment.

{¶ 10} Mother is reviewed by CAAA on a "monthly or quarterly basis, * * * sometimes she does well. She will go where she's supposed to go and she'll do what she's supposed to do. And then other times she gets sidetracked with daily life, with stress, with boyfriends or whatever it is so she doesn't do what she's supposed to do." During the times Mother is not doing well on the program, Goodman stated that Mother was "resistant" in his counseling notes. For example, in an October 8, 2020 counseling note, it says that Mother "is resistance [sic] to treatment, to counseling and group. [Mother] is not working a daily plan of recovery."

{¶ 11} Mother "has not used opiates" during her treatment, however, "[i]t's the other things that she's taking that she's having an issue with." During an April 30, 2021 group session at CAAA, Mother described "how her addiction switched from opiates to alcohol." Goodman testified that CAAA is "primarily an

opiate methadone center * * *[b]ut clients normally become abstinent from their opiate use and they pick up other second addictions, which is alcohol sometimes, marijuana sometimes, and we work with them with that also."

{¶ 12} During counseling sessions, Goodman and Mother discussed "things on her treatment plan. And one of the things we talk mostly [about] is her drug use and * * * the issue's [sic] with her children * * *." Goodman explained that Mother was "stressed about the things she has to do to get her children back." According to Goodman, for a person with addiction "when you put too much on their plate they resort to what they know and that's just use."

{¶ 13} During Mother's February 9, 2022 session with Goodman, they discussed Mother's urine screenings over the previous six months. According to Goodman, Mother acknowledged to him during that session that she had started using cocaine and had used methamphetamine in September 2021.

{¶ 14} At the time of the Hearing, CAAA was "trying to encourage [Mother] to go into [an] intensive outpatient * * * program" for her alcohol, marijuana, and cocaine use. Mother was recommended to an intensive-outpatient program ("IOP") on February 9, 2022, and connected with Guidestone for the IOP but had not entered into the program.

{¶ 15} CAAA considers a client sober when they have displayed "true abstinence after 90 days." At the time of the Hearing, Goodman did not consider Mother to be living a sober life. When asked if he believes that Mother is attempting to fight her addictions, Goodman responded, "Some days, yes, I do." He explained

that Mother has complained to him that not having her children has given her stress. "[S]he says she loves her children. She said she [does not] think she could live without them." Further, Mother has indicated to Goodman that she will continue treatment at CAAA after the Hearing.

**B. CCDCFS Employees**

{¶ 16} Five CCDCFS employees testified at the permanent custody Hearing. Mary Beth Cole ("Cole"), Aimee Shipman ("Shipman"), and Amber Hunter ("Hunter") are caseworkers who were assigned to work on Mother's case as part of CCDCFS's "START Unit" between August 2020 and the date of the Hearing. According to Cole, "[t]he START Unit deals with babies that come into the system that have been exposed to drugs." Marty O'Sullivan ("O'Sullivan") and Tiere Reed ("Reed") are family advocates. As family advocates, O'Sullivan stated that his main job is to work "with parents in cases involving substance use disorder to help [them] attain and maintain sobriety."

{¶ 17} CCDCFS records indicated that Mother was first involved with the agency when her daughter, Ma.D., was born in April 2015 because Ma.D. "was born with substance use." As a result, Ma.D. was adjudicated abused.

{¶ 18} CCDCFS became involved in the current case in April 2019 because "at the birth of [A.F.H.] [M]other tested positive for substances." As a result, CCDCFS filed a complaint alleging that A.F.H. was neglected and dependent and sought court-ordered protective supervision, which was later granted.

{¶ 19} Cole became involved with A.F.H. in April 2020 when CCDCFS became aware that Mother's "housing was not stable. * * * She had stayed sometimes with her mother, other times with friends." CCDCFS learned that Mother was staying in the motel when "one of the attendants there found a child unsupervised in the parking lot." Cole described "the condition of the motel room had been pretty much trashed" and "also had a lot of liquor bottles" in it. As a result, the court granted CCDCFS temporary custody of A.F.H., and the goal of the case plan was reunification with Mother.

{¶ 20} Several case plans were developed over the course of CCDCFS's involvement with Mother. The two consistent objectives for Mother were independent housing and substance abuse.

{¶ 21} For housing, Cole testified that CCDCFS referred Mother to "the local collab and CMHA." Each of the CCDCFS witnesses testified that Mother's housing issue was never resolved. Mother reported that she had leased a home with her mother ("grandmother") but never provided a copy of the lease to CCDCFS and cancelled all scheduled CCDCFS visits to the home. Shipman testified that Mother's housing with grandmother would not have been appropriate housing for A.F.H. because grandmother had an open case with CCDCFS regarding one of Mother's siblings.

{¶ 22} Each CCDCFS employee testified that Mother was requested to submit to random drug screenings for the agency. Cole and O'Sullivan testified that Mother submitted to an agency drug screening only one time for each of them.

CCDCFS did have access to Mother's CAAA drug screenings, but according to Hunter, CCDCFS required its own screenings because CAAA's were not always randomly requested. Mother did not make progress on the substance-abuse objective according to CCDCFS standards because she had not submitted to the agency's random drug screenings, and the drug screenings performed by CAAA indicated that Mother had tested positive for various substances. Additionally, Mother told Cole that she had been "struggling" with alcohol and marijuana in December 2020.

{¶ 23} According to Shipman, mental health was not initially listed on Mother's case plan while Shipman was assigned to the case. However, Mother was "referred to Ohio Guidestone for some mental health services because she expressed a concern with [Shipman] over being depressed since her children were removed." Mental health and parenting were added to Mother's case plan in February 2022. Prior to parenting being added to Mother's case plan, Cole stated that Mother had engaged with a parenting class but never completed it.

{¶ 24} Hunter testified that at the time of the Hearing, A.F.H. had been placed with her paternal aunt and had been in that placement for over 12 months. According to Hunter, A.F.H. was "well bonded" with her caregivers.

**C. GAL**

{¶ 25} At the Hearing, A.F.H.'s GAL recommended that permanent custody be granted to CCDCFS. The GAL stated, "I found compelling there is the lack of

housing and stability by mother and sobriety. I believe the testimony was very clear as to the lack of sobriety by mother * * *."

{¶ 26} The GAL submitted a "May 2022 Report Supplement," which supplemented his reports previously filed with the court.  In the supplement, the GAL reiterated his recommendation "that permanent custody of [A.F.H.] is granted to the agency" because it would be A.F.H.'s best interest.  The GAL found that "Mother's addiction has been an ongoing disruption to her relationship with [A.F.H.] to the degree that GAL cannot recommend [that A.F.H.] return safely to Mother's care.  * * * Raising A.F.H. would fall solely on Mother's shoulders.  She is unable to bear such responsibility. "

## III.  Law and Analysis

### A. *Anders*

In Anders, the United States Supreme Court held that if appointed counsel, after a conscientious examination of the case, determines the appeal to be wholly frivolous, he or she should advise the court of that fact and request permission to withdraw.  Anders [386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493] at 744.  This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal.  Id.  Further, counsel must also furnish the client with a copy of the brief and allow the client sufficient time to file his or her own brief.  Id.

Once the appellant's counsel satisfies these requirements, this court must fully examine the proceedings below to determine if any arguably meritorious issues exist.  Id.; Loc.App.R. 16(C).  If we determine that the appeal is wholly frivolous, we may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements or we may proceed to a decision on the merits if state law so requires.  Anders; Loc.App.R. 16(C).

*In re C.S.*, 8th Dist. Cuyahoga No. 105700, 2017-Ohio-8664, ¶ 10-11.

{¶ 27} In the case at hand, Mother's counsel did not set forth a potential assignment of error. Instead, counsel gave an analysis of the record and case law concluding that after conducting a review of "the permanent custody Trial Transcripts of April 1, 2022 and April 29, 2022, [and] all pertinent documents from the trial court's records, including motions, orders, Exhibits, and the [GAL] reports * * * the undersigned cannot discern any meritorious argument."

{¶ 28} We acknowledge that *Anders* briefing arose in the context of criminal cases, however this court has approved the application of the *Anders* procedure in an appeal from a juvenile court's termination of parental rights. *In re C.S.* at ¶ 13.

## B. Independent Review

### 1. Standard of Review — Permanent Custody

{¶ 29} "An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." *In re M.J.*, 8th Dist. Cuyahoga No. 100071, 2013-Ohio-5440, ¶ 24. Pursuant to R.C. 2151.414(B)(1), "the court may grant permanent custody of a child to a movant if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency" and that any of the R.C. 2151.414(B) factors apply.

{¶ 30} Pertinent to this appeal, "[c]ourts apply a two-pronged test when ruling on permanent custody motions." *In re De.D.*, 8th Dist. Cuyahoga No. 108760, 2020-Ohio-906, ¶ 16. "To grant the motion, courts first must find that any of the factors in R.C. 2151.414(B)(1)(a)-(e) apply. Second, courts must determine that

terminating parental rights and granting permanent custody to CCDCFS is in the best interest of the child or children using the factors in R.C. 2151.414(D)." *Id.*

### 2. R.C. 2151.414(B)(1)(a)

{¶ 31} R.C. 2151.414(B)(1)(a) is satisfied if the child has not been abandoned or orphaned or been in agency custody for 12 or more months of a consecutive 22-month period, and "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." CCDCFS's motion for permanent custody argued that this provision applied.

{¶ 32} As noted by the trial court in its July 15, 2022 journal entry granting permanent custody of A.F.H. to the Agency, A.F.H. was "committed to the emergency custody of the Agency pursuant to an order journalized on July 1, 2020." CCDCFS filed its motion to modify temporary custody to permanent custody on January 22, 2021. Consequently, A.F.H. had not been in agency custody 12 months of a consecutive 22-month period at the time CCDCFS filed its motion.

{¶ 33} The court further found Mother has "failed continuously and repeatedly to substantially remedy the conditions causing the Child to be placed outside the Child's home" and that A.F.H. cannot be placed with Mother within a reasonable time or should not be placed with Mother.

{¶ 34} To assess whether the child cannot be placed with a parent within a reasonable time or should not be placed with a parent, courts look to R.C. 2151.414(E). Subsection (E)(1) instructs that the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not

be placed with either parent, if the court determines by clear and convincing evidence that

> * * * notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home * * *.

{¶ 35} Clear and convincing evidence in the record demonstrates that Mother has failed to remedy the conditions causing A.F.H.'s removal. A.F.H. was placed in CCDCFS protective supervision and ultimately temporary custody due to Mother's substance abuse during and after her pregnancy with A.F.H. At the Hearing, Goodman, Cole, Shipman, O'Sullivan, Reed, and Hunter each testified that Mother had an ongoing substance abuse problem. While Mother had been engaged in methadone treatment at CAAA, Goodman testified that Mother's addiction simply shifted from opiate use to alcohol. Further, Mother admitted to using cocaine, methamphetamine, alcohol, and marijuana while in the CAAA program.

{¶ 36} Therefore, we find that clear and convincing evidence in the record supports a finding that A.F.H. was not in CCDCFS custody for 12 months of a consecutive 22-month period but that she cannot be placed with Mother within a reasonable time or should not be placed with Mother.

### 3. R.C. 2151.414(D)(1) Best-Interest Factors

{¶ 37} The July 15, 2022 journal entry reflects that the court considered the best-interest factors under R.C. 2151.414(D)(1)(a)-(e), including A.F.H.'s: relationship with her family and foster caregivers; wishes; custodial history; and

need for a legally secure placement in addition to the GAL report. "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires." *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶ 31.

{¶ 38} The evidence in the record supports the court's decision that permanent custody to CCDCFS is in A.F.H.'s best interest. Hunter testified that A.F.H. had been placed with her paternal aunt for 12 months and was well-bonded to her caregivers. A.F.H.'s GAL opined that permanent custody to the Agency would be in A.F.H.'s best interest, noting the "lack of housing and stability by mother and sobriety." Further, regarding A.F.H.'s need for a legally secure permanent placement, the court heard from numerous witnesses that Mother had not reached sobriety, nor had she secured adequate housing during the pendency of the case.

{¶ 39} The Ohio Supreme Court has held that, regarding the best interest of the child portion of a permanent custody case, "[t]here is not one element that is given greater weight than the others pursuant to" R.C. 2151.414(D). *In re Shaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. "R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to" R.C. 2151.414(B)(1)(a)-(e). *Id*. at ¶ 64.

{¶ 40} Upon review, we find that the court properly considered the relevant statutory factors and acted within its discretion when it found that permanent custody to CCDCFS was in the best interests of A.F.H. We find that clear and

convincing evidence in the record supports the trial court's decision to terminate Mother's parental rights and grant custody of A.F.H. to CCDCFS.

{¶ 41} Accordingly, we grant counsel's motion to withdraw and dismiss the appeal.

It is ordered that appellee recover from appellant costs herein taxed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
MICHAEL JOHN RYAN, J., CONCUR