[Cite as *In re T.S.*, 2025-Ohio-462.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

IN RE  T.S., ET AL.                              :

Minor Children                                   :

                                                 Nos. 114294  and 114301

[Appeal by Mother]                               :

                                                 :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  February 13, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD23908274 and  AD24902353

---

***Appearances:***

Gregory T. Stralka, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

ANITA LASTER MAYS, J.:

{¶1} In this consolidated appeal, defendant-appellant, Mother of T.S. and

P.S. ("the children") appeals the trial court's decision granting permanent custody

of the children to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). We affirm the trial court's decision.

## I. Procedural History

**{¶2}** On July 20, 2023, CCDCFS filed a complaint alleging that T.S. was abused, neglected, and dependent, requesting temporary custody of T.S. On the same day, the trial court held a hearing and granted CCDCFS's request. On March 11, 2024, CCDCFS filed another complaint alleging that P.S. was abused and dependent, requesting permanent custody of P.S. On the same day, the trial court held a hearing and granted emergency predispositional custody of P.S. to CCDCFS.

**{¶3}** On April 25, 2024, CCDCFS filed a motion to modify temporary custody to permanent custody of T.S. On July 17, 2024, a trial was held, and the trial court granted permanent custody of the children to CCDCFS.

## II. Facts

### A. Testimony of Sarah Heggs, Extended Caseworker

**{¶4}** At trial, Sarah Heggs ("Heggs") testified that she is an extended caseworker with CCDCFS, who was assigned to the case of P.S. Heggs testified that P.S. came to the attention of CCDCFS as a result of Mother and P.S. testing positive for cocaine at her birth. Heggs spoke with Mother concerning the positive tests and learned that Mother struggles with cocaine addiction and had previous children removed from her care.

**{¶5}** During Heggs's testimony, she explained that Mother has not made significant progress with regards to Mother's participation in provided services; Mother is still testing positive for cocaine; Mother is withdrawn during therapy sessions; and Mother continues to make poor decisions. Mother was diagnosed with severe cocaine use and was referred to engage in a 12-step program and complete regular screens. Additionally, Mother has a history of mental-health concerns and engaging in domestic violence.

**{¶6}** Heggs testified that Mother was diagnosed with bipolar disorder, depression, and anxiety. Heggs also testified that Mother's behavior, at times, was very aggressive and defensive. Mother continued to have angry outbursts on phone calls and through text messages. As a result of Mother's cocaine use, she has been involved in several domestic-violence incidents where she hit the children's father over the head with an object and he lost consciousness. Mother was charged with felonious assault and domestic violence.

**{¶7}** Heggs continued her testimony and stated that there were concerns regarding Mother's lack of appropriate and adequate housing. At the time of P.S.'s birth, Mother was staying with friends. Mother has had five previous children removed from her care for the same issues.

**{¶8}** Heggs was cross-examined by Mother's attorney and testified that she was not a licensed social worker but had a bachelor's degree in social work. Under cross-examination, Heggs testified that Mother had custody of T.S. for a short time

after his birth. During that time, Mother started some of her case plan services but failed to attend several scheduled mental-health evaluation appointments. Heggs further stated that Mother had been recommended to complete an assessment for every treatment facility she had been assigned to but failed to complete each one.

{¶9} At the conclusion of Heggs's testimony, the trial court adjudicated P.S. dependent and continued to the proceedings regarding permanent custody of the children. Heggs then testified regarding T.S., stating that he was removed from Mother's custody July 20, 2023, for the second time due to Mother's significant cocaine use.

{¶10} Heggs stated that the initial plan was to facilitate reunification of Mother and the children. The objectives of the case plan for Mother included adequate housing, mental-health services, substance-abuse treatment, and parenting, anger management, and domestic-violence classes. Mother had been referred to four different programs to address her cocaine addiction but did not complete any of them. Heggs testified that Mother did not actively engage in any of the services to address her substance-abuse issue. Mother had missed 25 urine screenings and had not demonstrated any period of sobriety.

{¶11} According to Heggs, Mother was also referred to services to address her mental-health concerns. However, Mother never showed up to any of the appointments. Heggs testified that she had concerns regarding Mother's mental

health because her behavior has become very explosive, and she has been turned away from more than one visit with her children due to her aggression.

{¶12} Additionally, Mother never completed any of services or classes on her case plan. Heggs provided Mother with information about government housing; however, Mother has been unable to maintain stable and appropriate housing. Heggs then stated that Mother was currently in county jail due to her current criminal charges.

{¶13} Heggs further testified that the children are currently residing with their paternal grandmother, who allows both parents to freely visit the children. However, Mother's visits are supervised because of Mother's inability to remain sober. Heggs stated that she has supervised some of Mother's visits with the children, and they have been "great," because Mother is very engaging with the children.

### B. Testimony of Mother

{¶14} After Heggs's testimony, Mother testified that when T.S. returned to her care, she completed her case plan in four months. She claimed that she stayed sober for six months and lived in a sober-living house. Mother testified that she completed parenting classes and was attending narcotics anonymous meetings three times a week. Mother continued her testimony stating that T.S. was taken, again, from her custody when she was involved in a domestic-violence altercation with T.S.'s father.

{¶15} As a result, Mother was placed on another case plan that she did not complete but was working to complete. During that time, Mother got behind on her rent and was involved in another domestic-violence incident with the children's father. She pleaded guilty to attempted felonious assault and domestic violence. Mother testified that she is currently attempting to complete her current case plan.

{¶16} During cross-examination, Mother admitted that she continued to use illegal drugs, specifically cocaine with alcohol. Mother testified that she was asking the court for more time to complete her case plan. Further, Mother stated that all six of her children had been removed from her care and custody, but she was now ready to make a change.

### C. Testimony of Sheila Sexton, Guardian ad Litem

{¶17} After Mother's testimony, Sheila Sexton ("Sexton"), the guardian ad litem ("GAL") for the children testified that the children have been observed at their grandmother's home and are doing well there. Sexton also testified that Mother had continuously stated that she was going to change things and stay sober from April to the trial date, but Mother was unable to remain sober and drug free.

### D. Trial Court's Decision

{¶18} On July 29, 2024, the trial court committed the children to the permanent custody of CCDCFS for the purposes of adoption and terminated all

parental rights and responsibilities of Mother and Father.[1] The trial court detailed its findings for both children in one journal entry, stating: "There are two children in this matter and the court will discuss them both and use the plural children." Journal Entry No. AD23908274 (July 29, 2024).

{¶19} Mother filed this appeal and assigned two errors for our review:

1. The trial court's decision to grant permanent custody was against the weight of the evidence under the provision of R.C. 2151.414; and

2. The trial court's decision granting permanent custody of the children was contrary to the best interests of the children.

## III. Permanent Custody

{¶20} In Mother's assignments of error, she contends that the trial court erred by awarding permanent custody of the children to CCDCFS against the manifest weight of the evidence under R.C. 2151.414(E) and the judgment is not in the best interests of the children.

{¶21} To terminate parental rights and grant permanent custody to a county agency, the record must demonstrate by clear and convincing evidence the following: (1) the existence of one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e); and (2) permanent custody is in the best interest of the child. *In re S.H.*, 2012-Ohio-4064, ¶ 27 (8th Dist.). "Clear and convincing evidence" is that quantum of evidence that instills in the trier of fact a firm belief

---

[1] Father did not appeal.

or conviction as to the allegations sought to be established. *In re Y.V.*, 2011-Ohio-2409, ¶ 13 (8th Dist.), citing *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

**{¶22}** When determining the child's best interest pursuant to R.C. 2151.414(D)(1), courts analyze the following factors: (1) the interaction and interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and, (5) whether any of the factors in divisions R.C. 2151.414(E)(7) to (11) apply.

**{¶23}** The Supreme Court of Ohio has stated that "the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties." *In re Z.C.*, 2023-Ohio-4703, ¶ 11.

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.] "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is

consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*Id.* at ¶ 14.

**{¶24}** Regarding the first prong of the analysis, for both T.S. and P.S., the trial court found by clear and convincing evidence that pursuant to R.C. 2151.414(B)(1)(a), "it is in the best interest of the child to grant permanent custody to the agency that filed the motion for permanent custody and that the following apply: The child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." Journal Entry No. AD23908274 (July 29, 2024).

**{¶25}** Regarding the second prong of the analysis, the trial court stated:

In considering the best interests of the child, the court considered the following relevant factors pursuant to 2151.414(D)(1): The interaction and interrelationship of the child's parents, siblings, relatives, and foster parents; the wishes of the child; the custodial history of the child, including whether the child has been in temporary custody of a public children services agency or private child placing agency under one or more separate orders in disposition for twelve or more months of consecutive twenty-two month period; the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and whether any of the factors in Division (E)(7)-(11) of this section apply in relation to the parents and child.

The court finds that these factors weigh in favor of permanent custody.

*Id.*

{¶26} The "best interest determination" focuses on the child, not the parent. R.C. 2151.414(C); *In re Awkal*, 95 Ohio App.3d 309, 315 (8th Dist.). "'An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence.'" *In re I.E.*, 2024-Ohio-5487, ¶ 23 (8th Dist.), quoting *In re M.J.*, 2013-Ohio-5440, ¶ 24 (8th Dist.).

{¶27} "Only one of the four factors must be present for the first prong of the permanent custody analysis to be satisfied. Once the juvenile court ascertains that one of the four factors listed in R.C. 2151.414(B)(1) is present, then the court proceeds to an analysis of the child's best interest." *In re J.B.*, 2013-Ohio-1705, ¶ 80-81 (8th Dist.).

{¶28} Further, the trial court determined that children could not be placed within a reasonable time or should not be placed with either parent because there is evidence that one or more factors in division (E) of R.C. 2151.414 exist:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

(16) Any other factor the court considers relevant. Father has never appeared for Court. Mother is on probation for attempted child endangering, with one of her other children as the victim.

*Id.*

**{¶29}** Under R.C. 2151.414(E)(11), the trial court elaborated and stated:

The mother has three children who are in the permanent custody of the agency. Therefore, the burden of proof shifts to the mother to show that she can legally secure permanent placement and adequate care for the health, welfare, and safety of the child. The court finds that she has failed to meet this burden.

The mother has not successfully addressed the issues identified in her case plan. She is currently residing in the county jail and did not have safe and stable housing prior to that. She failed to provide urine screens as requested, and when she did, the screens showed the

presence of illicit substances. Prior to her remand to the county jail, there was not [sic] sobriety date for the mother. She is not able to meet the basic needs of the children.

*Id.*

{¶30} Continuing to address the first prong of the analysis, the trial court stated in its journal entry:

The court further finds that reasonable efforts were made to prevent the removal of the children from their home, or to return the children to the home. The Cuyahoga County Division of Children and Family Services has made reasonable efforts to finalize the permanency plan. Those efforts include: Mother received referrals to Ethan's Crossing, Hitchcock, Serenity Health, Catholic Charities for mental health, substance abuse, housing, parenting, anger management and domestic violence. Mother has engaged in services but has failed to complete services; Father received a referral to Signature Health; Children received referral to Help Me Grow.

*Id.*

{¶31} As to the first prong of the analysis, we find that granting permanent custody to the agency is in the best interest of the child. As discussed in the analysis above, the trial court did find clear and convincing evidence of the existence of several conditions set forth in R.C. 2151.414(B)(1)(a) through (e). There the trial court did not err.

{¶32} The second prong of the analysis requires the trial court to determine that granting permanent custody to the agency is in the best interest of the child. In accordance with R.C. 2151.414(D)(1):

In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or

(5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶33}** In the trial court's journal entries, it states that regarding R.C. 2151.414(D)(2)(e), R.C. 2151.414(E)(11) applies. Journal Entry No. AD23908274 (July 29, 2024). The journal entry states: "The mother has three children who are in the permanent custody of the agency. Therefore, the burden of proof shifts to the mother to show that she can legally secure permanent placement and adequate

care for the health, welfare, and safety of the child. The Court finds that she has failed to meet this burden." *Id.*

**{¶34}** Additionally, the trial court stated that "the GAL for the children recommends permanent custody as being in their best interest." *Id.* Further, the court found by clear and convincing evidence that it is in the best interest of the children to be placed in the permanent custody of CCDCFS pursuant to R.C. 2151.414(D)(1) and (2) and granted CCDCFS's motion to modify temporary custody to permanent custody. The trial court terminated the rights of the parents.

**{¶35}** Thus, after a thorough review of the record, we find that there is clear and convincing evidence supporting the determination to award permanent custody to CCDCFS, and the trial court's decision to grant permanent custody is not against the weight of the evidence under the R.C. 2151.414(E) and is in the best interests of the children. Therefore, Mother's assignments of error are overruled.

**{¶36}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EMANUELLA D. GROVES, J., CONCURS;
LISA B. FORBES, P.J., CONCURS IN JUDGMENT ONLY